PITTMAN, Judge.
These consolidated proceedings concern the propriety of a final judgment entered by the Etowah Probate Court allowing M.T.O. and S.P.O. (“the petitioners”) to adopt a minor child, M.J.B. (“the child”). Because the probate court erroneously determined that a required consent or relinquishment could be implied under the evidence presented, we conclude that the judgment under review is void and, therefore, dismiss the appeals.
On October 15, 2012, the petitioners filed in the probate court a verified petition seeking to adopt the child. In pertinent part, the petitioners averred in their petition that the child, an infant born in January 2012, was in the custody of the Etowah County Department of Human Resources (“DHR”) and had been physically placed in the petitioners’ home on May 15, 2012; that the child’s mother and father were, respectively, S.A. (“the mother”) and J.B. (“the father”); and that the consents of the mother and the father to the proposed adoption “should be implied due to abandonment of the [child]” or because, the petitioners said, “the mother and father [had] not otherwise maintained a significant parental relationship -with the [child] for a period of six months.” Attached to the petition as an exhibit was a copy of an order entered by the Etowah Juvenile Court (“the juvenile court”) in its case no. JU-12-199.01, which apparently involved the child’s dependency; in that order, the rights of the petitioners to consent to the child’s travel and medical care were recognized by the juvenile court. Also on October 15, 2012, the probate court entered an interlocutory order (see Ala. Code 1975, § 26-10-18) granting the petitioners custody of the child, directing notice of the adoption proceeding to be given to the mother and the father, directing that a particular person (Beth Hughes) perform a post-placement investigation regarding the proposed adoption, appointing a guardian ad litem for the child, and setting the case for a dispositional hearing on December 18, 2012.
Between October 17 and October 29, 2012, DHR, the mother, and the father each filed motions to set aside the probate court’s interlocutory order, and the mother and the father each also sought, in the alternative, a stay of that order. Among the grounds asserted by all the movants were that DHR was “working toward reunification [of the child] with the mother and/or [a] possible relative placement,” that the juvenile court “ha[d] a pending case regarding the ... child,” and that the petitioners were foster parents of the child who had breached their contract with DHR. Further, the mother and the father separately averred in their motions that they had not abandoned the child and had remained in contact with the child by means of visitations scheduled by DHR, and both labeled the petitioners’ abandonment allegation as “an outright false statement.” Further, on October 30, 2012, a guardian ad litem who had been appointed by the juvenile court in the parallel proceeding involving the child filed a motion to set aside the probate court’s interlocutory order, averring that the petitioners were undermining active efforts on the part of DHR, that guardian ad litem, the mother, and the mother’s biological relatives toward reunification of the child and the mother’s family. After the petitioners had filed responses to the motions filed by counsel for DHR, for the mother, and for the father and by the guardian ad litem *801 appointed by the juvenile court, the probate court set the motions for a hearing on December 18, 2012, the same date that court had previously scheduled for a dispo-sitional hearing.
According to testimony given on December 18, on November 7, 2012, the juvenile court entered an order removing the petitioners as foster parents of the child and placing the child in the physical custody of one of the child’s relatives, after which the petitioners apparently secreted the child from authorities. Thereafter, the probate court entered an order directing the petitioners “not to turn over custody of [the] child to any third parties pending further orders of’ that court. The conflict between the respective courts’ custody determinations prompted the issuance of an order on November 27, 2012, executed by four circuit-court judges and two district-court judges sitting in Etowah County that was directed to the sheriff of Etowah County and that mandated that the child be picked up from the petitioners and delivered to DHR. The mother then filed two motions in the probate court on November 30, 2012, one seeking the vacation of the probate court’s custody order and the other seeking dismissal of the adoption proceeding; both motions were based upon the petitioners’ loss of physical custody of the child by operation of the order of the juvenile court and the order executed by the judges of the circuit and district courts. The mother’s motions of November 30, 2012, in the probate court were also set for a hearing on December 18, 2012.
On December 18, 2012, the probate court called the case for a hearing. At that time, counsel for the petitioners requested that all the pending motions in the matter be taken up by the probate court separately and serially and that the courtroom be cleared of other parties and representatives while each movant’s motions were heard. The probate court granted the request of petitioners’ counsel and ordered the courtroom, in turn, cleared of persons not arguing DHR’s motions, the father’s motions, the mother’s motions, and the motion of the guardian ad litem that had been appointed by the juvenile court. During the hearing on her motions, the mother elicited testimony from Will Clay, the judge of the juvenile court who had presided over the dependency proceeding involving the child, and M.T.O., one of the petitioners. After all the motions had been argued and the probate court had indicated that they would be denied, the probate court then proceeded to bar from the courtroom anyone except the guardian ad litem that court had appointed, the petitioners, their counsel, and their sole witness, Bess Estis, a social worker who had made two visits to the petitioners’ home and who had prepared a post-placement report regarding the proposed adoption.
On the next day, December 19, 2012, the probate court entered orders denying all the pending motions that had been filed by the mother, the father, DHR, and the child’s guardian ad litem appointed by the juvenile court; an order appointing Estis to perform a post-placement investigation under Ala.Code 1975, § 26-10A-19(d)(l)d.; and a three-page judgment granting the proposed adoption. In its judgment, the probate court determined, in pertinent part, that the father and the mother had “failed to maintain a significant parental relationship with the [child] for a period in excess of six” months and that they had “impliedly and irrevocably consented to the” adoption. The father and DHR filed postjudgment motions to alter, amend, or vacate the final judgment, which were denied, and the mother and the father timely filed both notices of appeal from the judgment in the probate court and petitions for the writ of mandamus in this court; this *802 court Consolidated the cases and directed that they be treated as appeals, and they have been captioned accordingly.[1]
The mother and the father assert five identical issues. The first issue, whether the probate court properly entered its interlocutory order concerning the child’s custody during the pendency of the adoption proceeding, was rendered moot by the entry of the probate court’s final judgment granting the petition to adopt the child. See Ex parte A.M.P., 997 So.2d 1008, 1015 (Ala.2008) (“Once the final order of adoption is entered, the interlocutory order becomes moot.”).[2] Similarly, the fourth and fifth issues— whether the probate court erred in permitting the introduction of purportedly inadmissible evidence at the dispositional hearing and whether it erred in accepting Estis’s post-placement investigation report despite, according to the mother and the father, supposedly lacking certain categories of required information — do not warrant disturbing the probate court’s judgment; those alleged errors were not first raised in the probate court and, therefore, have been waived. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“[An appellate court] cannot consider arguments raised for the first time on appeal; rather, [its] review is restricted to the evidence and arguments considered by the trial court.”); accord Alabama Dep’t of Human Res. v. B.V., 59 So.3d 700, 710 (Ala.Civ.App.2010) (applying rule to review of probate-court judgment).[3]
However, the second issue raised by the mother and the father — whether the probate court erred in determining that the mother had impliedly consented to the adoption of the child — directly implicates the probate court’s very authority to grant the relief requested by the petitioners:
“ ‘ “The adoption of a child was a proceeding unknown to the common law. The transfer of the natural right of the parents to their children was against its policy and repugnant to its principles. It had its origin in the civil law and exists ... only by virtue of the statute *803 which ... expressly prescribes the conditions under which adoption may be legally effected.
“ ‘ “Consent lies at the foundation of statutes of adoption, and under our law this consent is made absolutely essential to confer jurisdiction on the ... court to make an order of adoption, unless the conditions ... exist specially provided by the statute itself and which render such consent of the parents unnecessary. Unless such consent is given, or, for the exceptional causes expressly enumerated is dispensed with, the court has no jurisdiction in the matter.... The power of the court in adoption proceedings to deprive a parent of his child being in derogation of his natural right to it, and being a special power conferred by the statute, such statute must be strictly construed, and in order to warrant the exercise of the special power ... in opposition to the wishes and against the consent of the natural parent, on the ground that conditions prescribed by statute exist which make that consent unnecessary, the existence of such conditions must be clearly proven ... if the statute is open to construction and interpretation, it should be construed in support of the right of the natural parent.” ’ ”
Ex parte A.M.P., 997 So.2d at 1015-16 (emphasis added; quoting McGowen v. Smith, 264 Ala. 303, 305, 87 So.2d 429, 430-31 (1956), quoting in turn In re Cozza, 163 Cal. 514, 522-24, 126 P. 161, 164-65 (1912)); accord M.M. v. D.P., 37 So.3d 179, 183 (Ala.Civ.App.2009) (“Because the probate court did not find that the father had consented to the adoption, the probate court was without jurisdiction to grant the stepfather’s petition and its judgment purporting to do so is void.”).[4]
The Alabama Adoption Code (“AAC”), Ala.Code 1975, § 26-10A-1 et seq., provides that for an adoption to have any legal effect, certain persons must give consent, including “[t]he adoptee’s mother.” Ala.Code 1975, § 26-10A-7(a)(2). As the Comment to that statute, which was published in the Alabama Code along with the statute itself, states, “the persons listed in section 26-10A-7 have an absolute veto power over the proposed adoption.” Moreover, that Comment, as well as the Comment following Ala.Code 1975, § 26-10A-24, leave no doubt that questions of consent take priority over issues regarding whether the proposed adoption is in the best interests of a proposed adop-tee. Finally, we note that under the AAC a probate court must find by “clear and convincing evidence” that “[a]ll necessary consents” to a proposed adoption “have been obtained.” See Ala.Code 1975, § 26-10A-25(b)(2); accord K.L.B. v. W.M.F., 864 So.2d 333, 339 (Ala.Civ.App.2002) (stating that the AAC “requires that implied consent must be found on ‘clear and convincing evidence’ ”).[5]
Although there was no evidence presented that the mother expressly consented to *804 the proposed adoption, the probate court in this case concluded, in pertinent part, that the mother’s consent could be implied because, that court determined, she had “failed to maintain a significant parental relationship with the [child] for a period in excess of six ... months.” The AAC provides that a consent required under § 26-10A-7 may be implied by, among other things, a parent’s “[k]nowingly leaving the adoptee with others without provision for support and without communication, or not otherwise maintaining a significant parental relationship with the adoptee for a period of six months.” Ala.Code 1975, § 26-10A-9(a)(3) (emphasis added). Consistent with settled rules of statutory construction, we must interpret the general phrase “not otherwise maintaining a significant parental relationship” in this context with reference to the specified circumstance listed, ie., knowingly leaving an adoptee both without support and without communication. Cf. Foster v. Dickinson, 293 Ala. 298, 300, 302 So.2d 111, 113 (1974) (“The words, ‘or otherwise’ in law when used as a general phrase following an enumeration of particulars are commonly interpreted in a restricted sense as referring to such other matters as are kindred to the classes before mentioned, receiving ejus-dem generis interpretation.”).
The record in this case in large measure consists of documentation submitted by the petitioners detailing the medical care administered to the child after the child had been hospitalized on two separate occasions between March 2012 and May 2012 with symptoms first of pneumonia and then of dehydration. That documentation does not reflect uniformly well upon the mother’s parenting during the four-month period between the child’s birth in mid-January 2012 and the child’s placement in foster care with the petitioners in mid-May 2012. Neither does the evidence of record of the mother’s loss of parental rights in a California proceeding as to an older sibling of the child inspire confidence in the mother’s ability to parent the child.
That said, however, it must be remembered that the legislature of Alabama has seen fit to mandate that a mother’s consent to a proposed adoption of her child shall be required and that that consent may be deemed implied under subsection (a)(3) of § 26-10A-9 only from the existence of a six-month period during which that mother has “[k]nowingly le[ft] the adoptee with others without provision for support and without communication” or has similarly failed to act to maintain a significant parental relationship. Not only does the record reflect no voluntary actions on the mother’s part during the first four months of the child’s life to leave the child in the care of others except for the limited purpose of obtaining medical services, but the record also reflects that the mother lost custody of the child involuntarily by judicial action after the child’s hospitalization during mid-May 2012. Further, despite the petitioners’ having affirmed, in a conclusory manner, in the verified petition to adopt that the mother had abandoned the child and had failed to maintain a significant parental relationship with the child for a six-month period preceding the filing of that petition,[6] M.T.O. *805 admitted during questioning by the mother in the probate court that the child had been picked up from the petitioners’ home by DHR personnel for periods of up to three hours weekly for visits with the mother. Because the child was physically removed from the mother’s home by order of the juvenile court, the only inference the record supports is that the mother did all she could have done between May 2012 and October 2012 to “maintain[ ] a significant parental relationship” with the child by attending scheduled visitation. Finally, the period between mid-October 2012, when the adoption petition was filed, and mid-December 2012, when the final judgment was entered, was less than six months, which is insufficient to permit an inference of implied consent to be drawn under § 26-10A-9(a)(3). See M.M., 37 So.3d at 183 (probate court’s finding that a parent had failed to visit or support a child for three months did not support determination of implied consent to adoption under § 26-10A-9(a)(3)).
Based upon the foregoing facts and authorities, we conclude that “clear and convincing evidence” was not adduced that the mother had impliedly consented to the adoption sought by the petitioners. As the mother and the father correctly note in connection with their third issue on appeal, the AAC mandates that “[i]f any party whose consent is required fails to consent” to a proposed adoption, the adoption proceeding “will be transferred to the court having jurisdiction over juvenile matters for the limited purpose of termination of parental rights.” Ala.Code 1975, § 26-10A-3. We hold that the probate court acted outside its jurisdiction in granting the petition to adopt in the absence of the required express or implied consent of the mother; we thus dismiss the appeals as being from a void judgment, see M.M., 37 So.3d at 183, with instructions to the Eto-wah Probate Court to vacate its final judgment of December 19, 2012.
APPEALS DISMISSED WITH INSTRUCTIONS.
THOMAS, MOORE, and DONALDSON, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.

. The petitioners and the guardian ad litem appointed by the probate court have moved to dismiss the mother’s appeal or, in the alternative, to strike all or part of the mother's appellate brief because of the mother’s inclusion of matters that, the movants contend, are dehors the record. On the authority of Roussel v. Payne, 352 So.2d 1364, 1370 (Ala.Civ.App.1977), we deny the motions, albeit not without noting that ”[t]his court in this instance, as in all instances, only considers relevant matters as shown by the record.”

. We note that neither DHR nor the parents of the child petitioned for an extraordinary writ or moved for a stay of the probate court's proceedings between the entry of the probate court’s interlocutory order and the entry of the final adoption judgment.

. The father's postjudgment motion to alter, amend, or vacate averred that the probate court was without power to enter a final adoption judgment without a post-placement investigation report and that Hughes, who had previously been appointed in the interlocutory order to perform the post-placement investigation, would be unable to perform such an investigation because the child was no longer capable of being observed in the petitioners’ home. However, Estis performed a post-placement investigation over the course of two visits, one of which occurred during the child’s presence in the petitioners’ home, and her authority was formally confirmed by an order of the probate court that was entered after she had testified at the dispositional hearing to her licensure as a social worker and her findings regarding the petitioners' home. Thus, at the time of the probate court’s final judgment, that court had, in fact, received a post-placement investigation report from ”[a]n individual appointed by the court,” see Ala.Code 1975, § 26-10A-19(d)(l)d., thereby negating that particular purported impediment to the probate court’s authority to enter its judgment.

. Because the question of consent is of jurisdictional magnitude, and because the existence of subject-matter jurisdiction is open to question at any time, even ex mero motu, see C.J.L. v. 868 So.2d 451, 453 (Ala.Civ.App.2003), we deem immaterial the apparent position of the petitioners and of the guardian ad litem appointed by the probate court that the mother and the father somehow did not timely inject the issue of the absence of the mother’s consent into the probate-court proceedings.

. Although the main opinion in K.L.B. was a plurality opinion of two judges of this court, two other judges separately expressed agreement in that case with the proposition that clear and convincing evidence of implied consent is necessary to sustain an adoption judgment based upon the presence of such implied consent. See 864 So.2d at 351 (opinion of Yates, P.J., concurring in the result, joined by Crawley, J., ”agree[ing] that, under the facts of th[at] case, there was not clear and convincing evidence” of implied consent).

. In light of the contention of the petitioners and the guardian ad litem appointed by the probate court that the conclusory statement of implied consent in the petition itself amounts to evidence, we deem it pertinent to note here that our supreme court has recognized that " 'verification alone does not necessarily convert a pleading into an acceptable affidavit’ ” and that " '[i]f a verified pleading proves to be inadequate to serve as an affidavit, it should have no more effect than an unverified pleading.’ ” Ex parte Quinlan, 922 So.2d 914, 917 (Ala.2005) (quoting 5A Charles Alan Wright & Arthur K. Miller, Federal Practice & Procedure: Civil § 1339 (3d ed. 2004)).