DONALDSON, Judge.
In order for the adoption of a child to have legal effect, the Alabama Adoption Code (“the AAC”), § 26-10A-1 et seq., Ala.Code 1975, requires the express or implied consent of the child’s parents. See § 26-10A-7(a), Ala.Code 1975. In- this case, T.N. and C.N. (“the foster parents”) petitioned the Elmore Probate Court (“the probate court”) to adopt S.B. (“the child”) and contended that the child’s minor mother, I.B. (“the mother”), had impliedly consented to the adoption. Following a trial on the merits, during which the mother adamantly opposed the adoption, the probate court entered a well-reasoned opinion, reflecting careful consideration of the evidence and solemn deliberation, finding that the best interests of the child would be served through adoption by the foster parents and that the mother had impliedly consented to the adoption. The mother appealed. The evidence presented to the probate court supports the finding that the child’s best interests would be served by the adoption. But, after a careful review of the record and upon application of the controlling provisions of the AAC, the evidence cannot support a finding that the mother had given her implied consent to the adoption; thus, we reverse the judgment and remand the cause to the probate court for further proceedings consistent ■with this opinion.

Facts and Procedural History

The mother became pregnant with the child at the age of 13 while living in Ohio with S.S., her uncle and then legal guardian. For the purposes of the adoption proceedings, the child’s father was “unknown.” During her pregnancy, the mother moved to Montgomery to live with D.S. and J.S., her maternal grandmother and grandfather. The child was born on June 16, 2010, in Montgomery.
The Montgomery County Department of Human Resources (“DHR”) became involved with the mother and the child shortly after the child’s birth when D.S. reported that the mother had engaged in erratic and threatening behavior. On July 10, 2010, the mother was admitted to Trin *223 ity Hospital in Birmingham for a mental evaluation, where she was diagnosed with major depression with psychotic features. She was discharged from the hospital on July 20, 2010.
Upon receiving additional reports from D.S. that the mother’s bizarre behavior had continued following her hospitalization, DHR filed a dependency petition regarding the child on July 30, 2010, in the Montgomery Juvenile Court (“the juvenile court”), alleging that the mother was mentally unstable and that the child was not safe in her care. The child was removed from the mother’s custody and placed in the temporary physical custody of D.S. and J.S. The juvenile court granted DHR temporary legal custody of the child.
On July 30, 2010, DHR also filed a dependency petition in the juvenile court alleging that the mother was dependent. That petition stated that D.S. wanted the mother removed from her home due to the mother’s instability and erratic behavior. The mother was placed in the temporary legal custody of DHR, and she was placed in a therapeutic foster home with D.C., a resident of Montgomery, on August 10, 2010. On September 15, 2010, D.S. filed a dependency petition in the juvenile court alleging that the child was dependent and requesting that custody of the child be granted to her and J.S.
On October 4, 2010, the mother reported to a school counselor that she had been sexually abused and that D.S. had failed to protect the mother from the abuse. On October 5, 2010, DHR filed a dependency petition alleging that the child was not safe in the home of D.S. and J.S. due to the mother’s allegations of abuse. Pursuant to a pickup order of the juvenile court, the child was removed from the home of D.S. and J.S. DHR was granted temporary legal custody of the child. DHR placed, the child in foster care with the foster parents, who reside in Montgomery. The juvenile court directed that the mother was to be allowed weekly supervised visitation with the child. In April 2012, the mother’s visitation schedule was changed to once a week with overnight visitations every other week.
■The mother was hospitalized on two additional occasions for behavioral issues. In October 2010, she was admitted to East Alabama Medical Center in Opelika for psychiatric evaluation. From March 2, 2011, until March 17,2011, the mother was hospitalized at Laurel Oaks Hospital due to suicidal ideation.
On April 20, 2012, DHR changed the permanency plan for the child from a plan to return the child to her mother to a plan of termindtion of the mother’s parental rights with adoption by the foster parents. On July 13, 2012,' DHR filed a petition to terminate the mother’s parental rights in the juvenile court. The petition cited'the mother’s history of mental illness and negative behaviors, and alleged that the mother was unable to care for herself or -the child and that the mother had been unsuccessful in adjusting her circumstances to meet the needs of child. The foster parents also filed a petition to terminate the mother’s parental rights to the child in the juvenile court on November 8, 2013.
In August 2013, the mother underwent a psychological evaluation. The evaluating psychologist concluded that the mother, despite her tumultuous past, had found consistency in her íiving arrangements with D.C. and had matured socially and emotionally. The evaluating psychologist also concluded that thé mother showed no signs of debilitating emotional instability. Based on the psychologists’s report, DHR ultimately abandoned its petition to terminate the mother’s parental rights and changed the permanency plan for the child back to a plan to return the child to the *224 mother. On September 19, 2013, the foster parents filed a petition for adoption of the child in the probate court. At the time that petition was filed, the mother was 17 years old and the child had been living with the foster parents for approximately 3 years. The foster parents alleged in the petition that the mother and the father of the child had failed to maintain a significant relationship with the child. The foster parents alleged that the mother had been “sporadic in her visitation with the child (completing little more • than 1/3 -of scheduled visits), despite aid • and assistance from [DHR] in exercising what visitation has been accomplished.” The foster parents further alleged that “[the mother] has * failed to make sufficient efforts and progress to even be awarded unsupervised visitation with the [child]. The parents have failed to support the [child], leaving all the care, supervision, medical treatment, educational training, and financial support to the [foster parents] — ”
■ Subsequently, the probate court- entered an interlocutory order , in which it directed that the child be placed in the custody of the foster parents.- The child, however, remained in the custody of DHR pursuant to the previous order of the juvenile court. The probate court set a dispositional hearing for January 7, 2014, and appointed guardians ad litem for the mother, the child,.and the unknown father. According to a return of service, the mother and D.C. were served with notice of the adoption proceedings on October 12, 2013. The petition, for adoption, however, was- not included with the notices to. the mother and D,Cj, DHR was served with the notice and the adoption petition by certified mail. The unknown father , was served by publication with the last date .of publication being November 16,2013.
DHR, before receiving service5of process in the adoption action, filed a contest to the' adoption in the probate court on November 1, 2013. In the notice of contest, DHR noted that it had legal custody of both the mother and the child. DHR’s filing also stated that the mother had not “given any consent to the adoption.” DHR further requested that the probate court transfer the matter to the juvenile court and that the adoption proceedings be stayed. The mother, through counsel, filed an answer contesting the adoption in the probate court on November 13, 2013, although the mother’s counsel listed November 12, 2013, as the date of the certificate of service of the pleading. The mother also filed a motion to dismiss and to transfer the matter to the juvenile court. Additionally, the mother filed a motion to vacate the probate court’s interlocutory order. Counsel for the unknown father appeared in the probate-court proceedings and filed a motion on December 18, 2013, for a change in venue because, he stated, venue in Elmore County was improper because none of the parties nor the child resided in Elmore County. The probate court held a hearing on December 19, 2013, and denied the motions to transfer the proceedings to the juvenile court and the motion to stay the proceedings. The probate court also continued the scheduled January 7, 2014, dispositional hearing so that the parties could rectify issues concerning proper notice of the hearing.
On December 23, 2013, the juvenile court entered an order directing that the child be removed from the home of the foster parents, that the child be placed in D.C.’s, home with her mother, and that DHR would remain the temporary legal custodian of the child. In that order, the juvenile court also granted.the.foster parents visitation with thq child.
On January 6, 2014, DHR filed a motion in the juvenile court to withdraw its petition to terminate the mother’s parental *225 rights. In that motion, DHR stated that the mother “is working with two in-home service providers for reunification services,” that the mother “is complying fully with the department,” and that “the permanency plan for the minor child is Return to Parent.” The juvenile court granted that motion on January 7, 2014. On January 24, 2014, DHR filed a- motion in the probate court to withdraw its contest to the adoption. The probate court granted that motion on January 27,2014.
On March 12, 2014, D.C. -filed a petition for custody of the child in the juvenile court. On April 21, 2014, the juvenile court conducted a final hearing on that petition. That same day, the juvenile court entered an order relieving DHR of temporary custody of the child and granting D.C. sole legal and physical custody of the child. The juvenile court’s order stated that it was final and that the case was “closed to further review.”
The probate court conducted a hearing , on the foster parents’ petition for adoption on April 22, 2014, and received additional testimony on April 30, 2014. The probate court heard the testimony of the mother, D.C., T.N., C.N., the child’s pediatrician, and employees of DHR, among others. The probate court also received into evidence DHR’s records relating to the mother and the child. The day before the trial, the probate court appointed a new guardian ad litem for the mother because the initial guardian ad litem had a scheduling conflict.
According to DHR’s records, thé mother maintained regular contact and visitation with the child between October 2010 and February 2012. Those records show that the mother’s visits with the child became inconsistent beginning in February 2012. T.N. testified that, from May 2012 to September 2013, the mother had .attended only 28 of 71 possible visits. He testified that there were 20 seven-day periods between August 9, 2012 and September 18, 2013, when the mother did not contact the child and that there were 89 of 405 days with no contact. He testified that, in June 2012, the mother failed to attend the child’s birthday' celebration because she overslept.
The mother, who was 17 years old at the time of the trial, testified that she had not abandoned the child and that she adamantly opposed the adoption. The mother testified to numerous tumultuous events in her life. The evidence showed that the mother did not own a car, did not have a driver’s license, and that she relied on others for transportation.
On May 8, 2014, the probate court entered a 33-page order in which it made detailed findings of fact and concluded that the mother had impliedly consented to the foster parents’ adoption of the child in two ways. The probate court determined that the mother had failed to file a timely contest of the adoption pursuant to § 26-10A-9(a)(4), Ala.Code' 1975. The probate court also determined that clear and convincing evidence had been presented to show that the mother had “not otherwise maintain[ed] a significant parental relationship with the adoptee for a period of six months.” § 26-10A-9(a)(3). The probate court further determined that clear and convincing[1] evidence had established that adoption by the foster parents was in the best interests of the child. Accordingly, the probate court granted the foster parents’ adoption petition. The mother filed' a timely notice of appeal to this court on May 14, 2014. The case was submitted for a decision on. October 14; 2014.[1]
*226 On appeal, the mother contends (1) that venue was improper in Elmore County, (2) that the probate court erred by failing to transfer the adoption proceedings to the juvenile court, and (3) that the mother did not impliedly consent to the adoption.

Discussion

I. Venue
Although the mother couches her first argument in terms of “jurisdiction,” the mother’s challenge is actually based on improper venue rather than jurisdiction. The mother asserts that because DHR no longer had custody of the child at the time of the adoption hearing and because neither the mother, nor the foster parents, nor D.C., nor the child resided in Elmore County, the probate court lacked jurisdiction over the parties and erred by failing to dismiss the petition on that ground. The mother does not dispute that the probate court had subject-matter jurisdiction over the adoption proceedings. Under the AAC, probate courts have exclusive original jurisdiction over all adoption proceedings. Section 26-10A-3, Ala.Code 1975, provides:
“The probate court shall have original jurisdiction over proceedings brought under the [AAC]. If any party whose consent is required fails to consent or is unable to consent, the proceeding will be transferred to the court having jurisdiction over juvenile matters for the limited purpose of termination of parental rights. The provisions of [the AAC] shall be applicable to proceedings, in the court having jurisdiction over juvenile matters.”
Section 26-10A-4, Ala.Code 1975, addressing venue of adoption proceedings, provides:
“All petitions may be filed in the probate court in the county in which:
“(1) The minor or adult resides or has legal residence;
“(2) A petitioner resides, or is in military service; or
“(3) An office of any agency or institution operating under the laws of this state having guardianship or custody of a minor or an adult is located.”
The foster parents maintain that, despite the fact that they, the mother, D.C., and the child reside in Montgomery County, venue was proper in Elmore County pursuant to subsection (3) of § 26-10A-4 because the Alabama Department of Human Resources maintains an office in Elmore County. In its judgment, the probate court stated the following concerning venue:
“DHR, which has an office in Elmore County, Alabama, had custody of the minor child adoptee, S.B., at the time the adoption proceeding was filed in this probate court, the Probate Court of El-more County. Therefore, venue is proper under Section 26-10A-4, Code of Alabama. No party at any time requested a lateral transfer of venue to the Probate Court of Montgomery County or to any other available probate court. The court notes that it is common for this probate court to hear, without objection from DHR, adoption cases involving DHR where no other party in the proceeding is a resident of Elmore County.”
Whether § 26-10A-4(3) authorizes venue of a petition for adoption in the probate court of any county where the Alabama Department of Human Resources maintains an office would be an issue of first impression for this court, if properly presented. The mother, however, has failed to provide this court with any citation to authority to substantiate her argu *227 ment; thus, we are precluded from addressing the mother’s contention that the probate court should have transferred or dismissed the adoption proceedings based on improper venue once the juvenile court relieved DHR of custody of the child. As we have previously stated, the issue of improper venue is waivable. W.T.H. v. M.M.M., 915 So.2d 64, 73 (Ala.Civ.App.2005) (holding that an argument concerning improper venue is waived on appellate review when no authority is cited to support the proposition). It is well settled that “[t]his court will address only those issues properly presented and for which supporting authority has been cited.” Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996).
“Rule 28(a)(10)[, Ala. R.App. P.,] requires that arguments in briefs contain discussions of facts and relevant legal authorities that support the party’s position. If they do not, the arguments are waived. Moore v. Prudential Residential Servs. Ltd. P’ship, 849 So.2d 914, 923 (Ala.2002); Arrington v. Mathis, 929 So.2d 468, 470 n. 2 (Ala.Civ.App.2005); Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App.2002). ‘This is so, because “ ‘it 4s not the function of this Court to do a party’s legal research or to make and address legal arguments for a party based on undelineated general propositions not supported by sufficient authority or argument.’ ” ’ Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007) (quoting Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003), quoting in turn Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994)).”
White Sands Grp., L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1058 (Ala.2008). Thus, we will not reverse the probate court’s judgment on the basis that venue was improper.
• II. Failure to Transfer to the Juvenile Court . •
The mother next contends that the probate court exceeded its discretion by failing to transfer the adoption proceedings to the juvenile court. The mother contends that the AAC- mandates that the probate court should have transferred the adoption proceedings to the juvenile court, which, she contends; had exclusive, original jurisdiction ovér the mother and the child by virtue of the dependency and termination-of-parental-rights actions filed in that court. In Ex parte A.M.P., 997 So.2d 1008 (Ala.2008), our supreme court provided a detailed discussion of the provisions of the AAC that pertain to transfer of adoption proceedings to the juvenile court:
“We note that § 26-10A-3[, Ala.Code 1975,] vests the probate courts with ■original jurisdiction of proceedings brought under the [AAC]. Once a petition for adoption is filed in the probate court, however, there are four statutory provisions for a transfer to another court of either the entire proceeding or a specified portion thereof. -
“First, §12-12-35, Ala.Code 1975, provides:
“ ‘(a) Adoption proceedings, primarily cognizable before the probate court, may be transferred to the district court on motion of a party to the proceeding in probate court.
“‘(b) When adoption proceedings are transferred to the district court, a copy of the record of such proceedings shall be filed in the probate court, and the probate court offices shall maintain records of all adoption proceedings within their, respective counties.’
“This provision, ’ which predates the [AAC] but which was not affected by it, allows a party to an adoption proceeding to initiate a transfer, which is discretionary with the probate court (‘may be *228 transferred’), and, once a motion for transfer is granted, the entire ‘adoption proceeding[ ]’ is transferred to the district court.. See Ex parte C.L.C., 897 So.2d 234 (Ala.2004)(holding that, the primary jurisdiction over adoptions is in the probate court and-that, unless the juvenile court acquires jurisdiction over a petition to adopt by the transfer mechanism of § 12-12-35, the juvenile court is without authority to grant.an adoption)-.
“Second, § 26-10A-21[, Ala.Code 1975,] states:
‘“If, at any time during the pen-dency of the adoption proceeding, it is determined that any other custody action concerning the adoptee is pending in the courts of this state or any other state or country, any party to the adoption proceeding, or the court on its own motion, may move to stay such adoption proceeding until a determination has been made by an appropriate court with jurisdiction pursuant to the provisions of the Unifprm Child Custody Jurisdiction Act (UCCJA)[5] or the Parental Kidnapping Prevention Act (PKPA). The adoption may be transferred and consolidated with a custody proceeding in any court in this state.’
“This statute, which includes a transfer mechanism,- provides that, upon motion made by a party or upon the court’s own motion, the probate court may--stay an adoption proceeding while -a custody action is pending in another court, and, in addition, the probate court may transfer ‘the adoption’ to the other .court to be consolidated with the custody proceeding. Thus, this section, like §' 12-12-35 quoted above, provides for a discretionary transfer of the entire adoption proceeding. -
“Third, § 26-10A-24, [Ala.Code 1975,] dealing with hearings on adoption contests only, provides for a limited transfer in subsection (e), which states:
“‘(e) On motion of either party or of the court, a contested adoption hearing may be transferred to the court having jurisdiction over juvenile matters.’
“Like the two transfer provisions above, a transfer under this provision, which may be upon the request of a party or upon motion of the court, is a discretionary transfer by the probate court; however, unlike the other two .provisions, this section provides that only the ‘contested adoption hearing’ may be transferred, rather than the entire adoption proceeding. Therefore, after a juvenile court .has conducted a ‘contested adoption hearing1 transferred to it pursuant to § 26-10A-24(e) and decided the issues presented in the hearing, the adoption proceeding would be remanded to the probate court for further action.
“The last possible transfer procedure in an adoption proceeding is contained in § 26-Í0A-3, Ala.Code 1975, which states:
“ ‘The probate court shall have original jurisdiction over proceedings brought under [this] chapter. If any party whose consent is required fails to consent or is unable to consent, the proceeding will be transferred to the court having jurisdiction over juvenile matters for the limited purpose of termination of parental rights. The provisions of this chapter shall be applicable to proceedings in the court having jurisdiction over juvenile matters.’
“(Emphasis added.) As the emphasized portions of this section provide, if a necessary consent is not present, the proceeding must be transferred to the *229 juvenile court, but only for the limited purpose of determining whether the parental rights of the nonconsenting parent should be terminated. .
“Sections 26-10A-7 and --10 set out the entities from whom consents or re-linquishments are either required or not required, before an adoption can be granted. When a consent or relinquishment is required, §§ 26-10A-11 and-12[, Ala.Code 1975,] prescribe the requirements necessary for an express, written consent or relinquishment (and provide a form therefor), while § 26-10A-9[, Ala.Code 1975,] sets out the acts or omissions by which a consent or relinquishment required by § 26-10A-7 may be implied. The contest provision in the [AAC], § 26-10A-24, provides, among other grounds of contest, for the adjudication of the validity of either an express or implied consent.
“When the probate court has exercised its discretion to transfer the entire adoption proceeding (by virtue of § 12-12-35 or § 26-10A-21) to either a district or another court, the transferee court acquires jurisdiction, and the probate court thereafter maintains only record keeping responsibilities. See § 12-12-35(b) quoted above. When the probate court has exercised its discretion to transfer only that limited portion of the proceeding concerning a contested hearing (by virtue of § 26-10A-24(e)), it is nevertheless then the province of the transferee juvenile court, attendant to the transferred contested hearing, to decide a contested issue of implied consent. Put another way, it is the court that hears and decides the contest that determines ‘[w]hether an actual or implied consent or relinquishment to the adoption is valid.’ § 26-10A-24(a)(3).
“Accordingly, in the absence of a transfer of the contest, it is the probate court that hears and determines whether all necessary consents or relinquish-ments, either express or implied, are present. Where, as here, the probate court did not transfer the contest filed by the great-uncle and great-aunt,-the probate court properly proceeded to hear'and decide whether the mother and the putative father gave their implied consent pursuant to § 26-10A-9. The probate court found that each parent had given implied consent, and ■ there was then.no mother .or father who was required to give consent who had not done so, and therefore no basis for the' court to transfer the proceeding pursuant to § 26-10A-3 ‘for the limited purpose of termination of parental rights,’ as the mother so requested.
“It is only when there is no express or . implied -consent or relinquishment from a parent of the adoptee that the mandatory transfer portion of § 26-10A-3 applies, so that ‘the proceeding will be transferred to the court haying jurisdiction over juvenile matters for the limited purpose of termination of parental rights’ (Emphasis added.) When ap-plicablé, this transfer provision is mandatory, both because of its language and because the probate court cannot grant an adoption petition in the absence of a necessary parental consent or relinquishment, and it is the exclusive jurisdiction of the juvenile court, § 26-18-1 et seq., Ala.Code 1975, to terminate parental -rights, which obviates any further need for consent or relinquishment from the affected parent.,
■ “In the present ease, the great-uncle and great-aunt sought a transfer of the adoption proceeding to the juvenile court for. a termination ■ of parental rights under § 26-10A-3. When the legislature adopted .the [AAC] in 1990, § 26-10A-3 established the probate court as the court with original jurisdic *230 tion over adoptions. When § 26-10A-3 is read in para materia with § 26-10A-9, it is clear that if the probate court finds that the evidence does not prove implied consent or if the biological parent is unable to consent, then the probate court must transfer the case to juvenile court for a determination of whether to terminate parental rights. A fair reading of the [AAC] is that the court with original jurisdiction over adoptions should be able to determine whether a parent whose consent is required has, through his or her acts or omissions, impliedly consented to an adoption.
“ 5The UCCJA has been repealed and replaced by the Uniform Child Custody Jurisdiction and Enforcement Act (‘UC-CJEA’). See § 30-3B-101 et seq., Ala. Code 1975.”
997 So.2d at 1016-19.
The probate court in this case was not obligated to transfer the adoption proceedings to the juvenile court simply because the juvenile court was simultaneously exercising jurisdiction over other matters related to the mother and the child. The probate court properly utilized its discretion in declining to transfer the proceedings to the juvenile court. We find no reversible error in this regard.
III. Implied Consent to Adoption
Section 26-10A-7, Ala.Code 1975, states, in pertinent part:
“(a) Consent to the petitioner’s adoption or relinquishment for adoption to the Department of Human Resources or a licensed child placing agency shall be required of the following:
“(1) The adoptee, if 14 years of age or older, except where the court finds that the adoptee does not have the mental capacity to give consent;
“(2) The adoptee’s mother;
“(3) The adoptee’s presumed father, regardless of paternity, if [certain circumstances apply];
“(4) The agency to which the adop-tee has been relinquished or which holds permanent custody and which has placed the adoptee for adoption, except that the court may grant the adoption without the consent of the agency if the adoption is in the best interests of the adoptee and there is a finding that the agency has unreasonably withheld its consent; and
“(5) The putative father if made known by the mother or is otherwise made known to the court provided he complies with Section 26-10C-l[, Ala. Code 1975,] and he responds within 30 days to the notice he receives under Section 26-10A-17(a)(10)[, Ala.Code 1975].”
The mother contends that the. probate court erred in determining that she had impliedly consented to the foster parents’ adoption of the child. We note that the evidence presented to the probate court would support a finding that the foster parents offered the child hope, security, and a nurturing relationship. If the mother’s parental rights had been terminated by a juvenile court, the adoption could have occurred without her consent. Although DHR and the foster parents filed petitions in the juvenile court seeking to terminate the mother’s parental rights to the child, those petitions were not adjudicated by the juvenile court; therefore, under the AAC, because the mother’s parental rights to the child had not been terminated, the mother’s explicit or implicit consent to the adoption was required in order for the adoption to have legal effect.
As we have previously held:
“ ‘ “ ‘The adoption of a child was a proceeding unknown to the common *231 law. The transfer of the natural right of the parents to their children was against its- policy and repugnant to its principles. It had its origin in the civil law and exists ... only by virtue of the statute which ... expressly prescribes the conditions under which adoption may be legally effected.
“1 “ ‘Consent lies at the foundation of statutes of adoption, and under our law this consent is made absolutely essential to confer jurisdiction on the ... court to make an order of adoption, unless the conditions .... exist specially provided by the statute itself and which render such consent of the parents unnecessary. Unless such consent is given, or, for the exceptional causes expressly enumerated is dispensed with, the court has no jurisdiction in the matter.... The power of the court in adoption proceedings to deprive a parent of his child being in derogation of his natural right to it, and being a special power conferred by the statute, such statute must be strictly construed, and in order to warrant the exercise of the special power ... in opposition to the wishes and against the consent of the natural parent, on the ground that conditions prescribed by statute exist which make that consent unnecessary, the existence of such conditions must be clearly proven ... if the statute is open to construction and interpretation, it should be construed in support of the right of the natural parent.’ ” ’
“Ex parte A.M.P., 997 So.2d [1008] at 1015-16 [ (Ala.2008) ] (emphasis added; quoting McGowen v. Smith, 264 Ala. 303, 305, 87 So.2d 429, 430-31 (1956), quoting in turn In re Cozza, 163 Cal. 514, 522-24, 126 P. 161, 164-65 (1912)); accord M.M. v. D.P., 37 So.3d 179, 183 (Ala.Civ.App.2009) (‘Because the probate court did not find that the father had consented to the adoption, the probate court was without jurisdiction to grant the stepfather’s petition and its judg-ement purporting to do so is void.’).
“The [AAC] provides that for an adoption to have any legal effect, pertain persons must give consent, including ‘[t]he adoptee’s mother.’ Ala.Code 1975, § 26-10A-7(a)(2). As the Comment to that statute, which was published in the Alabama Code, along with the statute itself, states, ‘the persons listed in section 26-10A-7 have an absolute veto power over the proposed adoption.’ Moreover, that Comment, as well as the Comment following Ala.Code 1975, § 26-10A-24, leave no doubt that questions of consent take priority over issues regarding whether the proposed adoption is in the best interests of a proposed adoptee. Finally, we note that under the AAC a probate court must find by ‘clear and convincing evidence’ that ‘[a]ll necessary consents’ to a proposed adoption ‘have been obtained.’ See Ala.Code 1975, § 26-10A-25(b)(2); accord K.L.B. v. W.M.F., 864 So.2d 333, 339 (Ala.Civ.App.2002) (stating that the AAC ‘requires that implied consent must be found on “clear and convincing evidence” ’).”
S.A. v. M.T.O., 143 So.3d 799, 802-03 (Ala.Civ.App.2013)(footnotes omitted).
The mother was á minor when the child was born and’had not reached the age of majority at any time during the pendency of the adoption proceedings. We first note that § 26-10A-8, Ala.Code 1975, addresses consent to adoption by a minor parent. As initially enacted by Act. No. 90-554, Ala. Acts 1990, subsections (a) and (b) of this statute require the appointment of a guardian ad litem for a minor parent prior to that minor parent’s giving consent to an adoption and provide that consent executed by a minor parent is not subject to *232 revocation “by reason of such minority” In 1999, however; the legislature,- through Act No. 99-435,-Ala. Acts 1999, amended § 26-10A-8 to add subsection (c), which states:
“A minor father may give his implied . consent by his actions. • If a court finds by conclusive evidence that a minor father has given implied consent to the adoption, notice and the appointment of a-'guardian ad litem shall not be necessary.” ■ ■
The legislature did not include a provision for implied consent' by a minor mother. One might question whether, by providing that a minor father may give implied consent by::his actions but not addressing implied' consent by a minor mother, the legislature intended to implicitly determíne that a minor mother may not consent to adoption by implication. No argument as to that issue, however, has been presented to this court by the parties.
"Therefore, we will address the question whether the mother impliedly consented to adoption solely under § 26-10A~9(a), Ala. Code 1975, which provides:
“(a) A consent or relinquishment, required by Section 26-10A-7[, Ala.Code 1975,] may be implied by any of the following acts of a parent:
“(1) Abandonment of the adoptee. Abandonment includes, but is not .limited to, the failure of the father, with reasonable knowledge of the pregnancy, to offer financial and/or emotional support for a period of. six months prior to the birth,
“(2) Leaving the adoptee without provision for,his or her identification for a period of 30 days.
“(3) Knowingly leaving the adoptee with others' without provision for support and without1 communication, or •not, otherwise maintaining a significant parental relationship with the adoptee for a period of six months.
“(4) Receiving notification of the pendency of the adoption proceedings under Section 26-10A-17L Ala.Code 1975,] and failing to answer or otherwise respond to the petition within 30 days.
“(5) Failing to comply with Section 26-10C-l[, Ala.Code 1975].”
“(b) Implied consent under subsection (a) may not be withdrawn by any person.”
The probate court in this case determined that the mother had impliedly consented to the adoption because she had “failed to maintain a significant parental relationship with the adoptee for a period of six months” arid because she had failed to respond to the foster parents’ petition for adoption within 30 days of being served with notice of the adoption proceedings.
We first address the mother’s contention that the probate court erred in determining that she had impliedly consented to the adoption under § 26-10A-9(a)(3) by “[k]nowingly leaving the adoptee with others without provision for support and without communication, or not otherwise maintaining a significant parental relationship with the adoptee for a period of six months.”
This court recently discussed the manner in which probate courts are to apply § 26~10A-9(a)(3), In S.A, a child was temporarily removed from the custody of the parents by order of a juvenile court in a dependency proceeding and placed in.the care of foster parents. The foster parents filed a petition to adopt the child in a probate court. After a hearing, the probate court found that the- mother and the father had impliedly consented tq the adoption because they had “‘failed to maintain a significant parental relationship with the [child] for a period in excess of six *233 months.’” 143 So.3d at 801. Applying the rules of statutory construction to interpret § 26-10A-9(a)(3) on appeal, this court stated:
“Consistent with settled rules of statutory construction, we must interpret the general phrase ‘not otherwise maintáin-ing a significant parental relationship’ in this context with reference to the specified circumstánce listed, ie,, knowingly leaving an adoptee both without support and without communication. Cf Foster v. Dickinson, 293 Ala, 298, 300, 302 So.2d 111, 113 (1974) (‘The words, “or otherwise” in law when used as a general phrase following an enumeration of particulars are commonly interpreted in a restricted sense as referring to such other matters as are kindred to the classes before mentioned, receiving ejus-dem generis interpretation.’).

((

“... [I]t must be remembered that the legislature of Alabama has seen fit to mandate that a mother’s consent to a proposed adoption of her child shall be required and that that, consent may be deemed implied under subsection (a)(3) of § 26-10A-9 only from the existence , of a six-month period during which that mother has ‘[k]nowingly le[ft] the adop-tee with others without provision for support and without communication’ or has similarly failed to act to maintain a significant parental relationship. . Not only does the record reflect no voluntary actions on the mother’s part during the first four months of the child’s life to leave the child in- the care of others except for the limited purpose of obtaining medical services, but the record also reflects that the mother lost custody of the child involuntarily by judicial action after the child’s hospitalization during mid-May 2012. Further, despite the petitioners’ having affirmed, in a conclu-sory manner, in the verified petition to adopt that the mother had abandoned the child and had failed to maintain a significant parental relationship with the child for a six-month period preceding the filing of that petition, M.T.O. admitted during questioning by the mother in the probate court that the- child had been picked up ..from the petitioners’ home by [Department. of Human Resources] personnel for periods of up to three hours weekly for visits with, the mother. Because the child was physically removed fi'om the mother’s home by order of the juvenile court, the only inference the record supports is that the mother did all she could have done between May 2012 and October 2012 to ‘maintain[] a significant parental relationship’ with the child by attending scheduled visitation... Finally, the period between mid-October 2012, when the adoption petition was filed, and mid-December 2012, when the final judgment was entered, was less than six months, which is insufficient to permit an inference of implied consent to. be drawn under § 26-10Af-9(a)(3), See M.M.[ v. D.P.], 37 So.3d [179] at 183 [ (Ala.Civ.App.2009) ] ... (probate court’s finding that a parent had failed to visit .or support a child for three months did not support determination of implied consent to adoption under § 26-10A-9(a)(3)).”
143 So.3d at 804-05 (footnote omitted; some emphasis in original; some emphasis added).
As in S.A., the probate court in the present case determined that the mother failed to maintain. a significant parental relationship with the child for a period of six months. As in S.A., the mother in this case lost custody of the child by involuntary judicial action of the juvenile court. We cannot conclude, under these facts, that a loss of custody by- action- of the *234 juvenile court equates to the mother’s knowingly leaving the child with others.
The foster parents contend that in S.A. this court inappropriately added the element of “voluntariness” to § 26-10A-9(a)(3). Such an argument fails to consider-that consent under the AAC requires some voluntary action or inaction by a parent. In fact, the legislature has defined consent as “[voluntarily agreeing to adoption.” § 26-10A-2(4), Ala.Code 1975. To the extent that the foster parents request that this court overrule or modify S.A., we decline to do so.
We next consider whether the mother had impliedly consented to the adoption under § 26-10A-9(a)(4) by failing to timely respond to the notice of the adoption proceedings. Section 26-10A-9(a)(4) provides that consent may be implied when a parent “[r]eceive[s] notification of the pendency of the adoption proceedings under Section 26-10A-17[, Ala.Code 1975,] and fail[s] to answer or otherwise respond to the petition within 30 days.” The foster parents filed their adoption petition with the probate court on September 19, 2013. On October 12, 2013, the mother was served with notice of the adoption proceedings, although- a copy of the adoption petition was not included with service.[2] An answer was due within 30 days of service. The mother’s court-appointed attorney filed an answer to the petition with the probate court on November 13, 2013, or 32 days after the mother was served with notice of the adoption proceedings. The answer contained a certificate of service dated November 12, 2013, 31 days after the mother was served with notice.
The parties and the probate court apparently read § 26-10A-9(a)(4) as requiring an answer to be “filed” within 30 days, and their arguments on appeal address only whether the mother’s filing of the answer 32 days after receiving notice of the adoption proceedings constitutes implied consent to the adoption. We note that neither party has raised the sufficiency of the service of the mother’s answer under the Alabama Rules of Civil Procedure, which “apply to the probate court in adoption proceedings to the extent they apply under Section 12-13-12[, Ala.Code 1975].”[3] § 26-10A-37, Ala. Code 1975. Rule 12(a), Ala. R. Civ. P., requires a defendant to “serve an answer within thirty (30) days after the service of the summons and complaint upon that de-fendant_” Rule 5(b), Ala. R. Civ. P., provides that service “upon [an] attorney ... shall be made by delivering a copy to the attorney or the party or by mailing it to the attorney....” Rule 5(b) further provides that “[s]ervice by mail is complete upon mailing.” Rule 5(d), Ala. R. Civ. P., states that “papers after the complaint required to be served upon a party, together with a certificate of service, shall *235 be filed with the court either before service or within a reasonable time thereafter....” (Emphasis added.) The record shows a service date on the mother of October 12, 2013. Her answer would have been due 30 days later on November 11, 2013; however, because that date was a holiday, namely Veterans Day, her answer was due on November 12, 2013. See Rule 6(a), Ala. R. Civ. P. Thus, the mother’s filing of her answer could be considered timely under the Alabama Rules of Civil Procedure because the certificate of service indicates that her attorney mailed the answer to the attorney for the foster parents on November 12, 2013. The parties did not argue in the probate court, and do not raise before this court, the applicability of Rule 5 and Rule 12 and whether the service of the answer on November 12, followed by filing of the answer on November 13, complied with the statutory directive to “answer or otherwise respond” within 30 days under § 26-10A-9(a)(4). We conclude, however, that even if that statute requires the answer to be “filed” with the probate court within 30 days, consent to the adoption could not be impliedly found from these facts.
Section 26-10A-9(a), Ala.Code 1975, provides that “[a] consent or relinquishment required by Section 26-10A-7L Ala.Code 1975,] may be implied by [certain enumerated] acts of a parent.” (Emphasis added.) The legislature used the word “may” instead of the word “shall.” As this court has stated:
“[T]he use of the word ‘may’ indicates a discretionary or permissive act, rather than a mandatory act. American Bankers Life Assurance Co. v. Rice Acceptance Co., 739 So.2d 1082, 1084 (Ala.1999). See also Bowdoin Square, L.L.C. v. Winn-Dixie Montgomery, Inc., 873 So.2d 1091, 1098-99 (Ala.2003) (stating that our supreme court has long recog- . nized, that the word ‘may1 denotes a permissive alternative rather than a mandatory restriction).”.
Ex parte Mobile Cnty. Bd. of School Comm’rs, 61 So.3d 292, 294 (Ala.Civ.App.2010). Stated otherwise, implied consent is not conclusively established by a late answer, but, by the use of the discretionary term “may,” the legislature declared that implied consent may be inferred in such a circumstance. Such an inference must be established- by clear and convincing evidence. See '§ 26-10A-25(b)(2), Ala. Code 1975 (stating that a probate court shall grant a final decree of adoption if clear and convincing evidence establishes that consent has been obtained).
Although the certificate of service for 'the mother’s answer was dated on the 31st day after she received notice of- the adoption proceedings and although the answer was filed in the probate court on the 32nd day after she received notice, there is no evidence of any prejudice to any party or of any delay to the proceedings. Also, pursuánt to the literal wording of § 26-10A-17(b), Ala.Code 1975, the foster parents served the mother only with notice of the adoption proceedings and not with the adoption petition. It is undisputed that the mother did not receive a copy of the adoption petition along with the notice. Section 26-10A-9(a)(4) provides that consent may be implied where a parent “[r]e-ceiv[es] notification of the pendency of the adoption proceedings under Section - 26-10A-17 and fail[s] to answer or otherwise respond to the petition within SO days.” (Emphasis added.) The latter part of that statute specifically requires a parent, such as the mother, to answer or otherwise respond to the petition, not the notice of the adoption proceedings. Although we acknowledge that § 26-10A-17(b) appears to exclude- the mother from those persons or entities who are required to .be served *236 with the adoption petition, see note 2, supra, we question how the mother in this case could answer or otherwise respond to a petition with which she was not served in order to avoid application of § 26-10A-9(a)(4). Lastly, we: note that, at the time of the filing of the adoption petition, DHR was legal custodian of the mother and of the child, and, before .the mother filed her answer, DHR had already filed a notice of contest of adoption with the probate court on November 1, 2013, and had indicated that the mother opposed the adoption. A finding of implied consent under § 26-10A-9(a)(4) cannot be made under.the circumstances of this case — when there has been no showing of prejudice to any party and when the answer to the adoption petition was filed one day late by an attorney for a minor parent who is in foster care, who had. not been served with the petition for adoption, and whose legal guardian, DHR, had already filed a timely response in opposition to the adoption petition. Thus, we conclude that there was no clear and convincing evidence presented, to support a finding that the mother had impliedly consented to the foster parents’ adoption of the child under § 26-10A-9(a)(4).
The judgment was entered following an evidentiary, hearing in which the mother contested the adoption. Section 26-10A-24, Ala.Code 1975, provides, in part:
“(d) After hearing evidence at-a contested hearing, the court shall dismiss thé adoption proceeding if the court finds:
“(1) That the adoption is not in the best interests of the adoptee.
“(2) That a petitioner is not capable of adopting the adoptee.
“(3) That a necessary consent cannot be- obtained or is invalid.
' “(4) That a necessary consent may be -withdrawn. Otherwise the court shall deny the motion of the contesting party.”
Pursuant to that Code section, the judgment entered following a hearing at which the mother contested the adoption must be reversed and the cause remanded with instructions to the probate court to dismiss the adoption proceedings. See Ex parte W.L.K., 175 So.3d 652, 657 (Ala.Civ.App.2015) (analyzing the circumstances where adoption proceedings may be transferred under § 26-10A-24(e) or § 26-10A-3 or must be dismissed under 26-10A-24).

Conclusion

For the foregoing reasons, the judgment of the probate court is reversed, and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN and MOORE, JJ., concur.
THOMPSON, P.J., concurs in the result, without writing.
THOMAS, J., recuses herself.

. The foster parents filed a motion in this court to expedite the appeal. By statute, appeals from any final order rendered under the AAC are to be expedited by this court. See *226 § 26-10A-26(b), Ala.Code 1975. The motion to expedite is hereby denied as moot.

. Section 26-10A-17(b) provides that a copy of the petition for adoption is to be delivered to certain individuals and entities listed in subsection (a) of that statute. Conspicuously excluded from the persons § 26-10A-17(b) requires to be served with a copy of the adoption petition is "[a]ny person, agency, or institution whose consent or relinquishment is required by Section 26-10A-7[, Ala.Code 1975], unless service has been previously waived or consent has been implied.” § 26-1OA— 17(a)( 1). In this case, that would include the mother.

. Section 12-13-12, Ala.Code 1975, provides:
"The provisions of this code in reference to evidence, pleading and practice, judgments and orders in the- circuit court, so far as the same are appropriate, and the mode of obtaining evidence by oral examination or by deposition and of compelling the attendance of witnesses and of enforcing orders and judgments, in the absence of express provision to the contrary, are applicable to the proceedings in the probate court.”