J.D.S.

v.

J.W.L.

2140826.

Court of Civil Appeals of Alabama.

Jan. 29, 2016.

Certiorari Denied March 11, 2016
Alabama Supreme Court 1150494.

Faye A. Schofield of Schofield Legal Solutions, LLC, Lapine, for appellant.

Gypsy Morrow Smith, Elba, for appellee.

DONALDSON, Judge.

The Alabama Adoption Code ("the AAC"), § 26–10A–1·et seq., Ala.Code 1975, requires the express or implied consent of a child's parents before the child may be adopted. See § 26–10A–7(a), Ala.Code 1975. Evidence establishing a parent's consent must be clear and convincing. § 26–10A–25(b)(2), Ala.Code 1975. In this case, J.D.S. ("the father") appeals from the final judgment of the Covington Probate Court ("the probate court") granting the petition of J.W.L. ("the stepfather") to adopt D.G.A.S. ("the child"). The father objected to the adoption throughout the proceedings, but the probate court found that the father had, by his conduct before the proceedings began, given his implied consent to the adoption. Applying the applicable standard of review, discussed infra, we hold that the record fails to demonstrate that there was clear and convincing evidence establishing that the father's conduct was sufficient to provide his implied consent. Therefore, the judgment is reversed and the cause is remanded for the probate court to dismiss the adoption proceedings. § 26–10A–24(d)(3), Ala.Code 1975.

*Facts and Procedural History*

The father and B.M.L. ("the mother") married on June 14, 2002. The child was born August 26, 2003. The mother and the father divorced on December 28, 2004. The divorce judgment entered by the Covington Circuit Court granted the parents joint legal custody, the mother sole physical custody, and the father visitation rights. The father was also ordered to pay $440 per month in child support.

The mother and the stepfather married on December 2, 2005. The child has lived in the home with the mother and the stepfather since that time. On March 17, 2015, the stepfather petitioned the probate court to adopt the child, who was then 11 years old. In the adoption petition, the stepfather averred that the "father's consent is implied because he has abandoned the

[child] and he has knowingly left the [child] with others without communication and has not otherwise maintained a significant parental relationship with the [child] for a period in excess of six (6) months." On April 20, 2015, the father filed an answer to the stepfather's adoption petition in which he stated that he had joint legal custody of the child, that he had visitation rights with the child, that he had financially supported the child since birth, and that he had not abandoned the child or consented to the adoption of the child.

The probate court held a hearing on April 29, 2015, for the purpose of determining whether the father had impliedly consented to the adoption. At the hearing, the mother testified that, after the divorce, the father initially exercised his visitation rights consistently with the child but that his visitation and contact with the child began to taper off and had ceased altogether in March 2012. The mother testified that, since that time, the father had not sent birthday or Christmas cards or gifts to the child or had any other contact with the child. The mother testified that, in December 2012, the child was hospitalized and the father did not visit the child or otherwise check on him. The mother alleged that the father had not performed any parental duties, other than paying child support, in the three years preceding the hearing. Although the mother testified that the father had not paid for certain extracurricular expenses and school supplies for the child, the record shows that the father was current on his court-ordered child support payments at the time of the hearing.

The father testified that the last time he saw the child was on Thanksgiving in 2012 and that he was not aware that the child had been hospitalized in December 2012. The father admitted that he stopped making efforts to contact the child in January 2013. The father testified that he had financial problems that prevented him from being able to exercise his visitation with the child. The father also testified that he and the mother would argue when he exercised his visitation rights and that he did not want to "rock the boat." The mother testified that, at some point, she altered the visitation arrangements to require the father to pick up the child from her parents' house instead of from her house to avoid arguments with the father. The father testified that it was difficult to exercise his visitation with the child because he would not get off work until 5:30 or 6:30 p.m. on Friday evenings and that it was a two-hour drive round trip to retrieve the child. The father testified that, even after he stopped visiting with the child, he unsuccessfully attempted to contact the child by telephone. The father testified that he then stopped calling because he did not want to pressure the child. The father testified that, despite his lack of contact with the child, he loved the child, that he wanted to be involved in the child's life, and that he did not believe it was in the child's best interest to be adopted by the stepfather.

The probate court issued an order on June 10, 2015, in which it made the following pertinent findings:

"The evidence is undisputed that the natural father ceased all contact with the child for at least two years prior to the filing of the petition. The only parenting effort made by the natural father during this time period was the payment of court ordered child support. While the court takes as sincere the natural father's love of this son and desire to parent, the court is of the opinion that child support payments and sentiment are not the same as parenting.

"The court finds the following by clear and convincing evidence:

"1. That the natural father has ceased all contact with his son for a period exceeding six (6) months prior to the filing of the petition for adoption.

"2. That the natural mother did not engage in a course of conduct that would reasonably interfere with the natural father's right or opportunity for visitation with his son.

"3. That the natural father failed to maintain a significant parental relationship with [the child] for a period of six months preceding the filing of the petition for adoption.

"4. That the natural father has implsedly consented to the adoption of [the child] by [the stepfather]."

The probate court then set the matter for further hearing on June 24, 2015. On June 24, 2015, the father filed a motion to transfer the case to the Covington Juvenile Court for a termination-of-parental-rights hearing. The probate court denied this motion in open court and proceeded with the hearing. Evidence presented at that hearing showed that the stepfather and the child had developed a close familial relationship, that the stepfather had assumed a proper parental role in the child's life, and that the child considered the stepfather to be his parent.

On June 25, 2015, the probate court issued an order granting the stepfather's petition to adopt the child and finding, among other things, that "the consent of the natural father is implied for failure to maintain a significant parental relationship with the minor child for a period of six months preceding the filing of the petition for adoption." The father filed a timely notice of appeal to this court.

*Discussion*

On appeal, the father argues that the probate court erred in finding that his conduct constituted clear and convincing evidence of implied consent to the adoption. The father also argues that the probate court improperly relied upon § 26–10A–9, Ala.Code 1975, a part of the AAC, in finding that he had impliedly consented to the adoption. Finally, the father asserts that there was not clear and convincing evidence to support the probate court's finding that the father had impliedly consented to the adoption by abandoning the child.[1]

As this court has previously held:

" ' " 'The adoption of a child was a proceeding unknown to the common law. The transfer of the natural right of the parents to their children was against its policy and repugnant to its principles. It had its origin in the civil law and exists ... only by virtue of the statute which ... expressly prescribes the conditions under which adoption may be legally effected.

" ' " 'Consent lies at the foundation of statutes of adoption, and under our law this consent is made absolutely essential to confer jurisdiction on the ... court to make an order of adoption, unless the conditions ... exist specially provided by the statute itself and which render such consent of the parents unnecessary. *Unless such consent is given, or, for the exceptional causes expressly enumerated is dispensed with, the court has no jurisdiction in the matter....* The power of the court in adoption proceedings to deprive a parent of his child being in derogation of his natural

---

1. We note that the probate court did not make an explicit finding of abandonment in its or-

der.

right to it, and being a special power conferred by the statute, such statute must be strictly construed, and in order to warrant the exercise of the special power ... in opposition to the wishes and against the consent of the natural parent, on the ground that conditions prescribed by statute exist which make that consent unnecessary, the existence of such conditions must be clearly proven ... if the statute is open to construction and interpretation, it should be construed in support of the right of the natural parent.' " '

"*Ex parte A.M.P.*, 997 So.2d [1008] at 1015–16 [ (Ala.2008) ] (emphasis added; quoting *McGowen v. Smith*, 264 Ala. 303, 305, 87 So.2d 429, 430–31 (1956), quoting in turn *In re Cozza*, 163 Cal. 514, 522–24, 126 P. 161, 164–65 (1912)); *accord M.M. v. D.P.*, 37 So.3d 179, 183 (Ala.Civ.App.2009) ('Because the probate court did not find that the father had consented to the adoption, the probate court was without jurisdiction to grant the stepfather's petition and its judgment purporting to do so is void.').

"The [AAC] provides that for an adoption to have any legal effect, certain persons *must give consent*. . . . Ala.Code 1975, § 26–10A–7(a)(2). As the Comment to that statute, which was published in the Alabama Code along with the statute itself, states, 'the persons listed in section 26–10A–7 have an absolute veto power over the proposed adoption.' Moreover, that Comment, as well as the Comment following Ala.Code 1975, § 26–10A–24, leave no doubt that questions of consent take priority over issues regarding whether the proposed adoption is in the best interests of a proposed adoptee. Finally, we note that under the AAC a probate court must find by 'clear and convincing evidence' that '[a]ll necessary consents' to a proposed adoption 'have been obtained.' *See* Ala.Code 1975, § 26–10A–25(b)(2); *accord K.L.B.*

*v. W.M.F.*, 864 So.2d 333, 339 (Ala.Civ. App.2002) (stating that the AAC 'requires that implied consent must be found on "clear and convincing evidence" ')."

*S.A. v. M.T.O.*, 143 So.3d 799, 802–03 (Ala.Civ.App.2013)(footnotes omitted).

A finding that a parent has impliedly consented to an adoption must be established by clear and convincing evidence. See § 26–10A–25(b)(2)(stating that a probate court shall grant a final decree of adoption if clear and convincing evidence establishes that consent has been obtained). The record must contain

" '[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt.' "

*L.M. v. D.D.F.*, 840 So.2d 171, 179 (Ala.Civ.App.2002)(quoting § 6–11–20(b)(4), Ala.Code 1975).

Section 26–10A–9(a) provides, in part:

"A consent or relinquishment required by Section 26–10A–7[, Ala.Code 1975,] may be implied by any of the following acts of a parent:

"(1) Abandonment of the adoptee. Abandonment includes, but is not limited to, the failure of the father, with reasonable knowledge of the pregnancy, to offer financial and/or emotional support for a period of six months prior to the birth.

" . . . .

"(3) Knowingly leaving the adoptee with others without provision for support and without communication, or

not otherwise maintaining a significant parental relationship with the adoptee for a period of six months."

In granting the stepfather's adoption petition, the probate court stated that "the consent of the natural father is implied for failure to maintain a significant parental relationship with the minor child for a period of six months preceding the filing of the petition for adoption." As this court has previously explained:

"Consistent with settled rules of statutory construction, we must interpret the general phrase 'not otherwise maintaining a significant parental relationship' in this context with reference to the specified circumstance listed, *i.e.*, knowingly leaving an adoptee both without support *and* without communication. *Cf. Foster v. Dickinson*, 293 Ala. 298, 300, 302 So.2d 111, 113 (1974) ('The words, "or otherwise" in law when used as a general phrase following an enumeration of particulars are commonly interpreted in a restricted sense as referring to such other matters as are kindred to the classes before mentioned, receiving ejusdem generis interpretation.').

" . . . .

" . . . [I]t must be remembered that the legislature of Alabama has seen fit to mandate that a [parent's] consent to a proposed adoption of [his or her] child shall be required and that that consent may be deemed implied under subsection (a)(3) of § 26–10A–9 *only* from the existence of a six-month period during which that [parent] has '[k]nowingly le[ft] the adoptee with others without provision for support and without communication' or has similarly failed to act to maintain a significant parental relationship."

*S.A.*, 143 So.3d at 804.

In arguing that the probate court erred in determining that he had impliedly con-sented to the stepfather's adoption of the child, the father cites *K.L.B. v. W.M.F.*, 864 So.2d 333 (Ala.Civ.App.2002), *Butler v. Giles*, 47 Ala.App. 543, 258 So.2d 739 (Ala.Civ.App.1972), and *Schwaiger v. Headrick*, 281 Ala. 392, 394, 203 So.2d 114, 116 (1967).

In *K.L.B.*, the child's parents divorced when she was one year old. For nine years thereafter, the father maintained regular contact with the child, despite recurrent conflict between himself and the mother. In August 1997, after the father disciplined the child with a belt, the mother stopped the father's visitation with the child. The father did not see the child from that point until adoption proceedings were initiated by the child's stepfather in November 1998. The father actively opposed the adoption. The father testified that he would telephone the child but that he stopped calling because of conflicts with the mother and the impact of those conflicts on the child. The father claimed that, during the time that he did not contact the child, he would park his automobile near the child's home and school hoping to "at least [see] her from a distance." 864 So.2d at 339. The father continued to pay child support, and, although he had stopped paying child support for about nine months due to a dispute with the mother, he paid the arrearage owed in December 1998. This court concluded:

"[Section] 26–10A–9 provides only that a 'consent or relinquishment . . . *may be implied*' where a parent has not maintained a significant parental relationship with the child for a period of six months. Such a finding is not required. The failure to maintain such a relationship does not necessarily equate to an implied consent. As the Comment to § 26–10A–9 does explain, '[j]ust as acceptance of the terms of a commercial contract can be implied from the conduct

of a party, so *may* the consent of a person to the adoption be implied from the conduct of that individual.' (Emphasis added.) The various types of conduct listed in § 26–10A–9 are merely factors a court can consider in making the decision before it, namely, whether the parent has, through his or her conduct, communicated an implied consent to the adoption of his or her child. The fact that one of the factors enumerated in § 26–10A–9 might exist does not equate to a finding of implied consent, nor even give rise to a presumption thereof. As Justice Lyons has noted, '[t]he statute recites those acts on the part of a "parent" from which consent to an adoption … *might* be implied.' *Ex parte C.V.*, 810 So.2d 700, 709 (Ala.2001) (Lyons, J., concurring specially) (emphasis added)."

*Id.* at 340–41.

In *K.L.B.*, this court summarized the decisions in *Butler*, supra, and *Schwaiger*, supra, cases in which courts determined that natural fathers, who were absent from their children's lives for a period of at least six months and who did not pay their court-ordered child support, had not abandoned their children. This court stated:

"Prior to 1990, there was no statutory provision for a parent to give an 'implied consent' to the adoption of his or her child. The pre–1990 version of Alabama's Adoption Code was adopted, in the main, in 1940; instead of providing for an implied consent, the provision in the 1940 Code simply provided that 'the consent of a parent who has abandoned the child, or who cannot be found … may be dispensed with.' Title 27, § 3, Ala.Code 1940. In the context of such a statutory mechanism for dealing with abandoning parents, the holdings of this court in *Butler v. Giles*, 47 Ala.App. 543, 258 So.2d 739 (Ala.Civ.App.1972), and of

the Alabama Supreme Court in *Schwaiger v. Headrick*, 281 Ala. 392, 394, 203 So.2d 114, 115 (1967), are noteworthy.

"In *Butler*, shortly after a divorce was granted, the father moved to Oklahoma, where he remained for a year or more, except for an occasional visit to his parents in Tallapoosa County. Consequently, the stepfather eventually filed an adoption petition, alleging that the father had abandoned the child and that he could not be found. Service of notice of the adoption petition was made on the child's paternal grandfather on May 23, 1970. On May 26, 1970, the child's father filed his denial of consent to the adoption. As in the present case, the evidence was in dispute as to whether the mother and stepfather had thwarted the father's effort to visit the child, or whether the father had not tried to do so. Approximately one year after the divorce was granted, but approximately one year before the adoption petition was filed, the natural father filed a petition in Tallapoosa Circuit Court alleging that he had not been able to exercise rights of visitation and that he had been threatened with arrest by the mother. He also admitted in his petition that he was in arrears in his child-support payments in the sum of $1,300.

"On the basis of the facts before it, this court concluded in *Butler* that the acts or omissions of the father did not evince a 'settled purpose to [forgo] all parental duties and relinquish all parental claims to the child.' Quoting from the Alabama Supreme Court's opinion in *Schwaiger v. Headrick*, 281 Ala. 392, 394, 203 So.2d 114, 116 (1967), this court concluded:

" ' "The father's failure to comply with the order for support of the child, under the circumstances here present-

ed, and his failure to visit the child under existing misunderstandings in the family, does not, in our judgment, constitute abandonment within the purview of Section 3, Title 27, Code of 1940." '

*"Butler,* 47 Ala.App. at 547, 258 So.2d at 742.

"In *Schwaiger,* the Supreme Court concluded that the appellant had not intended to relinquish his rights, stating as follows:

" 'The most that can be said is that the natural father quit trying to visit the child; and, also, that after making two monthly payments for the support of the child, ... he quit paying. [The natural father] claims that he sent a payment to his [mother], who advised the natural mother that she had the money. The mother declined to come after the money and the [grandmother] refused to take it to her. Friction and a misunderstanding arose between the child's parents and their parents.

" 'We do not construe the conduct of the father to evince a settled purpose to [forgo] all parental duties and relinquish all parental claims to the child. The father's failure to comply with the order for support of the child, under the circumstances here presented, and his failure to visit the child under existing misunderstandings in the family, does not, in our judgment, constitute abandonment within the purview of Section 3, Title 27, Code of 1940.'

"281 Ala. at 394, 203 So.2d at 115–16 (citation omitted)."

864 So.2d at 341–42.

■ The record in this case shows that the father failed to act in a responsible manner in fulfilling his parental obligations to the child. The record would further support a determination by the probate court that the best interests of this child appear to be served by the adoption of the child by the stepfather. However, the legislature has provided that the adoption cannot occur without the father's consent, which in this case must be found by implication through clear and convincing evidence. Although the father failed to make contact with the child for approximately two years prior to the filing of the adoption petition, the father had maintained a relationship with his child for eight years before his absence and consistently paid child support even throughout the adoption proceedings. The father testified that he failed to visit the child because of financial problems and a difficult work schedule, not because he intended to abandon the child. He further testified that his situation had since improved and that he wanted to be involved in his child's life. Like the fathers in *K.L.B., Butler,* and *Schwaiger,* we cannot construe the evidence as being sufficient to clearly convince the fact-finder that this father's conduct "evince[d] a settled purpose to [forgo] all parental duties and relinquish all parental claims to the child." *Schwaiger,* 281 Ala. at 394, 203 So.2d at 116. Therefore, we conclude that there was not clear and convincing evidence demonstrating that the father impliedly consented to the adoption. Because we resolve the issue of implied consent in favor of the father, we need not address the other issues raised in his appellate brief.

### Conclusion

The judgment is reversed and the cause remanded with instructions to the probate court to dismiss the adoption proceedings. See § 26–10A–24(d)(3)(requiring the dismissal of an adoption proceeding when the required consent is not established).

REVERSED AND REMANDED.

PITTMAN, THOMAS, and MOORE, JJ., concur.

THOMPSON, P.J., concurs in the result, without writing.