**S.P.**

**v.**

**J.R. and R.R.**

**2150243.**

Court of Civil Appeals of Alabama.

April 1, 2016.

Julian B. Brackin, Jr., and J. Byron Brackin III of Brackin, McGriff & Johnson, P.C., Foley, for appellant.

Joseph D. Steadman of Dodson & Steadman, P.C., Mobile, for appellees.

MOORE, Judge.

S.P. ("the father") appeals from a judgment of the Baldwin Probate Court ("the probate court") denying his contest to the adoption of his child, B.P. ("the child"), by J.R. ("the stepfather"), the husband of the child's mother, R.R. ("the mother"). We reverse the probate court's judgment.

### Procedural History

On June 9, 2015, the stepfather filed in the probate court a petition to adopt the child. On July 22, 2015, the father filed an answer to the petition, contesting the adoption. After a trial, the probate court entered an order on November 24, 2015, finding that the father had impliedly consented to the adoption of the child under Ala.Code 1975, § 26–10A–9(a)(3), by "not otherwise maintaining a significant parental relationship with the [child] for a period of six months." The next day, the probate court entered a judgment granting the stepfather's petition to adopt the child. On December 7, 2015, the father filed his notice of appeal.

### Discussion

On appeal, the father argues that there was not clear and convincing evidence indicating that he had impliedly consented to the child's adoption.

"A finding that a parent has impliedly consented to an adoption must be established by clear and convincing evidence. See § 26–10A–25(b)(2)[, Ala.Code 1975] (stating that a probate court shall grant a final decree of adoption if clear and convincing evidence establishes that consent has been obtained). The record must contain

" ' "[e]vidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt." '

"*L.M. v. D.D.F.*, 840 So.2d 171, 179 (Ala.Civ.App.2002)(quoting § 6–11–20(b)(4), Ala.Code 1975).

"Section 26–10A–9(a)[, Ala.Code 1975,] provides, in part:

" 'A consent or relinquishment required by Section 26–10A–7[, Ala. Code 1975,] may be implied by any of the following acts of a parent:

" '(1) Abandonment of the adoptee. Abandonment includes, but is not limited to, the failure of the father, with reasonable knowledge of the pregnancy, to offer financial and/or emotional support for a period of six months prior to the birth.

" ' . . . .

" '(3) Knowingly leaving the adoptee with others without provision for support and without communication, or not otherwise maintaining a significant parental

relationship with the adoptee for a period of six months.'

"... As this court has previously explained:

" 'Consistent with settled rules of statutory construction, we must interpret the general phrase "not otherwise maintaining a significant parental relationship" in this context with reference to the specified circumstance listed, i.e., knowingly leaving an adoptee both without support *and* without communication. *Cf. Foster v. Dickinson*, 293 Ala. 298, 300, 302 So.2d 111, 113 (1974) ("The words, 'or otherwise' in law when used as a general phrase following an enumeration of particulars are commonly interpreted in a restricted sense as referring to such other matters as are kindred to the classes before mentioned, receiving ejusdem generis interpretation.").

" ' ....

" ' ... [I]t must be remembered that the legislature of Alabama has seen fit to mandate that a [parent's] consent to a proposed adoption of [his or her] child shall be required and that that consent may be deemed implied under subsection (a)(3) of § 26–10A–9 *only* from the existence of a six-month period during which that [parent] has "[k]nowingly le[ft] the adoptee with others without provision for support and without communication" or has similarly failed to act to maintain a significant parental relationship.'

"*S.A. [v. M.T.O.]*, 143 So.3d [799] at 804 [ (Ala.Civ.App.2013) ]."

*J.D.S. v. J.W.L.*, 204 So.3d 386, 390–91 (Ala.Civ.App.2016).

■ In the present case, the evidence indicates that the child was born on January 31, 2011, to the mother and the father, who were married at the time of the child's birth. The mother and the father divorced in December 2011, and the divorce judgment provided that the father would exercise supervised visitation with the child twice a month. The father was ordered to pay child support in the amount of $200 per month beginning on January 19, 2013. The mother testified that, after the parties divorced, the father had seen the child once a month until December 2013. According to the father, however, he had visited the child at least twice a month until the summer of 2014. The mother testified that the father had visited the child only five times in 2014, the last of which was in October 2014. The evidence indicates that the father voluntarily enrolled in an out-of-state drug-rehabilitation facility in January 2015, where he had remained for two months. The mother testified that the father had visited the child once in March 2015. The father was incarcerated from April 2015 until November 2015. The mother testified that the father had not written any letters to the child during that time. According to the father, after he was released from prison, he contacted the mother to schedule visitation, but the mother did not respond.

The father testified that he had paid some child support beginning in January 2013 and that, since October 2014, he had paid consistently. The mother, however, testified that she did not think she had received any child support in 2014. The evidence was undisputed that the child's paternal grandfather had deposited $200 per month into an account that the mother had opened for the child from January 2015 until the mother had instructed him to no longer deposit the money and had closed the account in July 2015. After the father was released from prison in November 2015, he sent $800 to the mother, but she refused to accept it. The evidence indicated that the paternal grandparents own their own business, that the father had worked at their business periodically, and that the paternal grandparents had kept the father on the business's payroll even during times when the father was not

actually working for that business. In addition, the evidence indicated that the child had been covered under health insurance provided by the business. The paternal grandfather testified that, before the father went into rehabilitation, the father had given the paternal grandfather a power of attorney and had instructed him to pay child support on the father's behalf.

In *J.D.S.*, this court reasoned:

"The record in this case shows that the father failed to act in a responsible manner in fulfilling his parental obligations to the child.... [T]he legislature has provided that the adoption cannot occur without the father's consent, which in this case must be found by implication through clear and convincing evidence. Although the father failed to make contact with the child for approximately two years prior to the filing of the adoption petition, the father had maintained a relationship with his child for eight years before his absence and consistently paid child support even throughout the adoption proceedings. The father testified that he failed to visit the child because of financial problems and a difficult work schedule, not because he intended to abandon the child. He further testified that his situation had since improved and that he wanted to be involved in his child's life.... [W]e cannot construe the evidence as being sufficient to clearly convince the fact-finder that this father's conduct 'evince[d] a settled purpose to [forgo] all parental duties and relinquish all parental claims to the child.' *Schwaiger [v. Headrick]*, 281 Ala. [392] at 394, 203 So.2d [114] at 116 [ (1967) ]. Therefore, we conclude that there was not clear and convincing evidence demonstrating that the father impliedly consented to the adoption."

204 So.3d at 393.

In the present case, the only six-month period in which the father failed to visit the child was during the father's seven-month incarceration. However, the evidence is undisputed that the father continued to pay child support during that period. Although the mother suggested that the child support was really being paid by the paternal grandparents, she did not present any evidence contradicting the testimony indicating that the support had been sent at the father's instruction. Furthermore, after the father was released from prison, he contacted the mother to schedule visitation with the child. We conclude that the evidence in the present case is even less clear and convincing than the evidence in *J.D.S.*, in which the father failed to visit for two years but continued to pay support. Although the mother points to a text message the father sent stating that he would sign over his rights to the child for $10,000, the father explained that he had sent that text message in anger and that he had not been serious about giving up his rights to the child. We cannot conclude that that isolated text message is clear and convincing evidence of implied consent in light of the other evidence in this case indicating the father's intent to maintain contact with and to support the child.

### Conclusion

Based on the foregoing, we reverse the probate court's judgment and remand this cause for the entry of a judgment consistent with this opinion.

REVERSED AND REMANDED.

PITTMAN, THOMAS, and DONALDSON, JJ., concur.

THOMPSON, P.J., concurs in the result, without writing.